IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**WATCHTOWER BIBLE TRACT SOCIETY OF NEW YORK, INC., et al.,**

　　**Plaintiffs,**

　　**v.**

**MUNICIPALITY OF AGUADA, et al.,**

　　**Defendants.**

**CASE NO. 16-1207 (GAG)**

**ORDER GRANTING DECLARATORY AND PERMANENT INJUNCTIVE RELIEF**

On February 4, 2016, Watchtower Bible And Tract Society of New York and Congregación Cristiana de los Testigos de Jehová (collectively "Plaintiffs") filed suit against the following Municipalities: Aguada, Aguas Buenas, Añasco, Arecibo, Barceloneta, Cabo Rojo, Camuy, Canóvanas, Carolina, Cataño, Ceiba, Cayey, Cidra, Coamo, Corozal, Fajardo, Florida, Guánica, Guayama, Hatillo, Hormigueros, Humacao, Isabela, Juana Díaz, Juncos, Las Piedras, Loíza, Luquillo, Manatí, Mayagüez, Naguabo, Patillas, Peñuelas, Río Grande, Salinas, San Germán, San Lorenzo, Toa Alta, Toa Baja, Vega Alta, Villalba and Yabucoa (hereinafter "Defendant Municipalities"), alleging violations of Jehovah's Witnesses' right to free speech and exercise of religion, under the First and Fourteenth Amendments of the Constitution of the United States, pursuant to 42 U.S.C. § 1983.  (Docket No. 42).

On February 10, 2016, the Court ordered Municipal Defendants to show cause whether they consented to the implementation of the Watchtower Phase I Directives; or if they did not

1

**Civil No. 16-1207 (GAG)**

consent, and therefore opted to litigate their case, answer the complaint or move to dismiss by the same date. (Docket No. 14 at 16.) The Court cautioned the defendant municipalities of the lack of likelihood of success that they had in this litigation, if they decided to contest the Watchtower I directives. Subsequently the Court issued a second and final show cause order in which it directed the Defendant Municipalities to show cause as to why <u>permanent</u> injunctive relief identical to the Watchtower Phase I Directives should not be ordered. (Docket No. 143.)

The Court notes the defendant municipalities' motions in compliance expressing their consent to the implementation of the Watchtower Phase I directives. (Docket Nos 145, 148, 150, 151, 152, 153, 154, 155, 156, 157, 161, 162, 163, 164, 167). Notwithstanding, some urbanizations petition the Court to modify the Phase I directives. The court cannot create different remedial schemes throughout the island. For example, the Municipality of San Juan cannot be subject to a different constitutional regime than the Municipality of San Germán. Accordingly, the proposals requesting variations of the conditions established in Watchtower I are unacceptable. All requests for variations and/or modifications of the Watchtower Phase I directives are thus, hereby denied.

## I.   WATCHTOWER PHASE I DIRECTIVES

On February 7, 2011, the United States Court of Appeals for the First Circuit remanded this case to this Court to assure that defendant municipalities ("Municipalities") and urbanizations allow Jehovah's Witnesses to enter urbanizations to engage in constitutionally protected activity. <u>Watchtower Bible and Tract Soc'y of New York v. Sagardía de Jesús, et al.</u>, 634 F.3d 3 (1st Cir. 2011), <u>reh'g denied</u>, 638 F.3d 81 (1st Cir. 2011), <u>cert. denied</u>, 132 S.Ct. 549 (2011). Although the First Circuit found the Commonwealth's Controlled Access Law of 1987, as amended, to be constitutional on its face, it nonetheless found the current regime, as applied, to unreasonably infringe on Jehovah's Witnesses' right to access public streets within controlled access

urbanizations. See Id. (finding Puerto Rico's control access law constitutional as applied and recognizing that Jehovah's witnesses are allowed to enter urbanizations to engage in constitutionally protected activity); Watchtower Bible and Tract Soc'y of New York v. Mun. of San Juan, 773 F.3d 1 (1st Cir. 2014) (affirming the District Court's remedial scheme crafted on remand) cert. denied, 135 S. Ct. 2395 (2015), and Civil Case No. 04-1452, Docket Nos. 710 (granting declaratory injunctive relief on remand); 718 (entering judgment); 904 (reiterating First Circuit's recognition of Plaintiffs' constitutionally protected right to engage in door-to-door ministry); 978 (amended partial judgment as to unmanned urbanizations); 1074 (Order summarizing the law and court Orders regarding the right of Jehovah's Witnesses to access public streets in gated communities in Puerto Rico, 2013 WL 1908307 (D.P.R. May 6, 2013)); 1173 (Certification of private roads issue to Puerto Rico Supreme Court, 2013 WL 2554879 (D.P.R. 2013)); 1264 (imposing sanctions against Municipalities for non-compliance); 1478 (second amended partial judgment on remand); 1721 (addressing Ponce and Estancias del Golf Club's private roads argument). These shall be collectively referred to as "Watchtower Phase I Directives."

The rulings of the First Circuit and this Court pertain to a single legal issue, namely, Jehovah's Witnesses' right to engage in activity protected by the First Amendment in public streets located within controlled access communities throughout the various municipalities. The First Circuit's mandate constitutes the applicable constitutional federal "law of the land." It is the controlling law in the District of Puerto Rico, thus, under the doctrine of *stare decisis*, the controlling law must be applied, absent convincing argument to the contrary —something that has not occurred.

## II. REMEDIAL SCHEME

It is undisputed that: 1) In every municipality there currently exist manned and unmanned gated urbanizations operating pursuant to controlled access permits issued by the various municipal defendants; 2) By virtue of law, the municipalities approve the controlled access permits within their geographic limits; 3) Each municipality has an ongoing duty to ensure that the First Amendment is respected in urbanizations founded under their auspices.  See <u>Watchtower</u>, 773 F.3d at 9.  None of the defendant municipalities here dispute that Jehovah's Witnesses' access to gated urbanizations has been denied and/or restricted.

In light of the above, the Court finds no reason why the requested declaratory and injunctive relief sought by Plaintiffs should not be granted.

Accordingly, the Court, in light of its authority under Article III of the Constitution of the United States and the Declaratory Judgment Act, 28 U.S.C. § 2201, and FED. R. CIV. P. 65 hereby **DECLARES** and **ORDERS** the following:

1. **All defendant municipalities and gated urbanizations within are permanently enjoined and ordered to immediately comply with all the Watchtower Phase I Directives.**  This means that Jehovah's Witnesses must be provided the same access to urbanizations as residents at all times.[1]

2. Further, within forty-five (45) days from the entry of this Order, to wit, September 6, 2016, each Defendant Municipality shall comply with the following instructions and certify to the Court the following:

---

[1] In its Order at Docket No. 14, the Court addressed, for purposes of issuing its TRO, the factors applicable to injunctive relief.  Said analysis remains unchanged.

**Civil No. 16-1207 (GAG)**

A. Each defendant municipality shall provide a list of all urbanizations within its geographic limit that operate a controlled access gate. The list shall include the names of the urbanizations and if it operates a manned or unmanned gate.

B. <u>Manned gates</u>:

1) The Municipalities must ensure that all their urbanizations provide entry to Jehovah's Witnesses who disclose their purpose and identity.

2) Each Municipality shall certify within 45 days from the entry of this Order the actions it has taken to implement this Order.

3) Also, Municipal defendants will certify an action plan that is immediately effected to assure that any Jehovah's Witnesses denied access be granted entry promptly, within a reasonable time. For example, a municipal police hotline, or similar solution. The undersigned recommends the defendant municipalities use as an example San Juan's action plan from Watchtower Phase I. (<u>See</u> <u>e.g.</u>, Docket Nos. 858, 962, 965.)

4) The Municipal Defendants will also certify what actions will be taken against urbanizations that fail to follow their instructions and/or the Court's directives. These actions may include the imposition of sanctions and/or the revocation of the controlled access permit, as provided by the Commonwealth's Controlled Access Law.

5) Notwithstanding, even within this forty-five (45) day period, Jehovah's Witnesses must be granted access within manned gated urbanizations.

C. Unmanned gates:

1) All municipal defendants shall collect and deliver to Plaintiffs a means of access to all unmanned urbanizations located within their municipality. Depending on the means of access, each urbanization shall deliver to Plaintiffs a physical key, an access code, beeper, or other device necessary to permit entry to the urbanization. The means of access provided to Plaintiffs must be equal to that of the residents of those urbanizations and must grant Plaintiffs unfettered access to the urbanizations, i.e., without restrictions.

2) Plaintiffs shall designate a representative and provide each defendant municipality the representative's contact information, no later than August 15, 2016.

3) Defendants must provide the stated means of access to Plaintiffs no later than 30 days after Plaintiffs designate their representative. Any municipality that has not complied with this order as of said date shall be fined $100 for each day until compliance with this order.

4) Plaintiffs, acting under strict orders from the court, are to maintain the keys, beepers and access codes for the sole purpose of expressing their faith. Plaintiffs are not to share the keys, beepers or access codes with any other party, person or organization. Violations of this order shall be deemed as contempt of court and shall be dealt with accordingly.

      5) Any urbanization that changes its means of access must notify the municipality in which it is located and Plaintiffs, prior to executing the change, except upon an emergency. The municipality shall be responsible for delivering the new means of access to Plaintiffs within seventy-two (72) hours of the change, not including holidays or weekends.

      6) The court notes the inherent cooperation that will be necessary in order to implement these directives. All parties have demonstrated their willingness to work together in resolving these thorny issues. The municipalities are expected to work in good-faith to ensure every urbanization complies with the court's orders. The Jehovah's Witnesses are equally expected to respect the court's orders and to also respect property owners' wishes. If a property owner places a sign on his property stating "No Trespassing," or its equivalent, the Jehovah's Witnesses are expected to respect the wishes of the property owner.

The pronouncements of this Court herein are consonant with the First Circuit's decision, as well as the Watchtower Phase I Directives. The Court expects all Municipal defendants to, within the allotted time (generic requests for continuances will not be looked upon favorably), comply with this order. Failure to do so shall result in immediate action, which may include sanctions, contempt, and the Court issuing any necessary relief, such as the immediate opening or removal of controlled accesses.

More so, as to all existing unmanned urbanizations, the court finds the remedy it has issued allows Jehovah's Witnesses the same access to unmanned urbanizations as person residing therein,

**Civil No. 16-1207 (GAG)**

twenty-four hours a day, seven days a week, and every day of the year. Thus, Jehovah's Witnesses' rights of religious exercise and expression are, by virtue of the court's ruling, not being limited by any time, place or manner restrictions.

The Court shall retain jurisdiction to enforce its declaratory judgment. 28 U.S.C. § 2202. The Municipalities subject to this order are the following:

1. Aguada
2. Aguas Buenas
3. Añasco
4. Barceloneta
5. Cabo Rojo
6. Camuy
7. Canóvanas
8. Carolina
9. Cataño
10. Cayey
11. Ceiba
12. Cidra
13. Coamo
14. Corozal
15. Fajardo
16. Guayama
17. Hatillo
18. Hormigueros
19. Humacao
20. Isabela
21. Juana Diaz
22. Juncos
23. Las Piedras
24. Loíza

**Civil No. 16-1207 (GAG)**

25. Luquillo
26. Manatí
27. Mayagüez
28. Naguabo
29. Patillas
30. Peñuelas
31. Río Grande
32. Salinas
33. San Germán
34. San Lorenzo
35. Toa Alta
36. Toa Baja
37. Vega Alta
38. Villalba
39. Yabucoa

In addition, the following municipalities are in default, and thus also subject to all directives herein.

1. Florida
2. Guánica
3. Arecibo

**SO ORDERED.**

In San Juan, Puerto Rico this 20th day of July, 2016.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI

United States District Judge

9